UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------X
MEHRDAD FOTOOHIGHIAM, ELECTENERGY
TECHNOLOGIES INTERNATIONAL, INC., n/k/a      Index No.
ELECTENERGY TECHNOLOGIES, INC. and
ELECTROFLOW TECHNOLOGIES                     **VERIFIED COMPLAINT**
INTERNATIONAL, INC., n/k/a ELECTROFLOW
TECHNOLOGIES, INC.
                                             JURY TRIAL DEMANDED
                *Plaintiffs*,
       vs.

IRAJ SARMASTI a/k/a AL SARMASTI, and NEDA
SARMASTI,

                *Defendants.*
------------------------------------------------------------------------X

Plaintiffs, MEHRDAD FOTOOHIGHIAM, ELECTENERGY TECHNOLOGIES INTERNATIONAL, INC., n/k/a ELECTENERGY TECHNOLOGIES, INC. and ELECTROFLOW TECHNOLOGIES INTERNATIONAL, INC., n/k/a ELECTROFLOW TECHNOLOGIES, INC. ("Plaintiffs"), complaining of defendants, IRAJ SARMASTI a/k/a AL SARMASTI and NEDA SARMASTI (collectively referred to as "Defendants"), allege(s) as follows:

## THE PARTIES

1. Plaintiff Mehrdad Fotoohighiam is a natural person who is and, at all times relevant to this claim, was a citizen and resident of Columbia, Missouri. He is suing on his own behalf and on behalf of the persons named on EXHIBIT 4 attached who are not one of the named Plaintiffs and Mr. Arab and Mr. Damghani mentioned below.

2. Plaintiff Electenergy Technologies International, Inc. ("Electenergy") has been a Missouri corporation which produced a device which when used properly would aid the

1

customer using it to reduce its use of electricity and thereby save considerable sums of money. This device was particularly helpful for customers that used large amounts of electricity when manufacturing or producing products that it sold commercially.

3.      Plaintiff Electroflow Technologies International, Inc. ("Electroflow") has been a Missouri corporation that was in the same business as Electenergy, except that it licensed the sale of the device manufactured outside the continental United States whereas Electenergy's sales were all within the continental United States.

4.      Electenergy Technologies, Inc. ("Electenergy") was originally incorporated in Missouri in 1981. It had an incorporation number of 00236978.

5.      Electroflow Technologies, Inc. ("Electroflow") was originally incorporated in Missouri in 1991. It had an incorporation number of 00359935.

6.      Mehrdad Fotoohighiam's father incorporated Electenergy and initially was its chief officer.

7.      Mehrdad Fotoohighiam incorporated Electroflow. His father was originally its chief officer.

8.      Originally Electenergy was a consulting company that also provided electrical and mechanical engineering assistance to businesses for a fee.

9.      Electroflow was incorporated when Plaintiff Fotoohighiam developed and invented a product which could be used to enhance the quality of electricity and reduced the usage of electricity up to thirty-four percent (34%) for industrial, commercial and institutional clients whose business processes consumed large quantities of electricity.

10. This device was produced by Electenergy and sold within the United States by companies acting as agents distributors for the product. Electroflow licensed the production and sale of the device outside of the United States.

11. Plaintiff's father died in 2011. However, a few years before his death, Plaintiff Fotoohighiam's father transferred ownership interests in Electenergy to Defendants Neda and Al Sarmasti. Each was given a twenty-five percent (25%) interest in Electenergy (50% of the total ownership).

12. For a period of eight to nine (8-9) years, Plaintiff Fotoohighiam took his children and then wife and moved to Iran in order to conduct various family business matters and in order to care for his ailing father. He returned to Columbia, Missouri in 2012. During the time Plaintiff Fotoohighiam was out of the United States, the corporate charters for the two Plaintiff corporations lapsed and a gentleman from Canada opportunistically grabbed their names. However, that effort was reversed in 2013.

13. Confusing the matter, in order to continue the business of selling the device that Plaintiff Fotoohighiam developed, two new companies were incorporated; those were Electenergy Technologies International, Inc. and Electroflow Technologies International, Inc. Recently, the original names of the companies were restored and their original Charters restored in their original names with their original Charter numbers. See EXHIBITs 2 and 3 attached hereto.

14. The Defendants Neda Sarmasti and Iraj Sarmasti a/k/a Al Sarmasti are husband and wife and at all times pertinent hereto have resided in and been citizens of the State of New Jersey. Defendant Neda Sarmasti is a cousin of Plaintiff Fotoohighiam.

15. The Sarmastis have acted jointly and severally in all regards to all claims hereunder each acting within the course and scope of his/her servancy and/or agency with the other.

16. None party ETI, L.L.C. has also been a Missouri corporation which facilitated the business of Electenergy and Electroflow.

17. Plaintiff Mehrdad Fotoohighiam has been the President of these Plaintiff companies and a principal shareholder at all times pertinent hereto.

18. These companies had many distributors and parts manufacturers, some of which were located within the United States and some of which were located outside of the United States. Some of those located in the United States have been located in Missouri.

## JURISDICTION & VENUE

19. Each of the Defendants conducts significant business in the State of New Jersey on a regular and continuing basis, such that personal jurisdiction applies to each of them.

20. Additionally, each of the Defendants reside in the State of New Jersey for business and personal matters, further establishing personal jurisdiction over the Defendants.

21. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum of $75,000 and this action is between citizens of different states, with no plaintiff residing in or being a citizen of any state for which any defendant resides or of which is a citizen.

22. Venue is proper in the United States District Court of New Jersey pursuant to 28 U.S.C. § 1391(b) because one or more defendant resides in this judicial district and all defendants are residents of the State in which this judicial district is located, and (ii) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**FACTS COMMON TO ALL CAUSES OF ACTION**

23. While in Iran, Plaintiff Fotoohighiam obtained an Iranian divorce from his wife Hedieh Zaerin Fotoohighiam in 2012. In spite of that Iranian divorce, in approximately April 2015, Hedieh Fotoohighiam filed for a divorce in Boone County Circuit Court against Plaintiff Fotoohighiam; Case No. 15BA-FC00643.

24. Over the ensuing several years, Plaintiff Fotoohighiam was charged with various criminal law violations and spent a significant period of time incarcerated in the Boone County jail.

25. At the end of June 2015 Plaintiff Fotoohighiam was originally charged with having committed arson. He was released on bond set in the amount of Five Million dollars ($5,000,000). Plaintiff Fotoohighiam's trial on those charges did not occur until 2019. The jury trial was presided over by the Honorable Steven Ohmer, a Circuit Court judge from the City of St. Louis of long standing and of excellent reputation. Plaintiff Fotoohighiam was found not guilty of having committed arson and all related charges, by the jury in August 2019.

26. Unfortunately, Plaintiff Fotoohighiam was also charged with violating an *ex parte* order of protection for which he was convicted in 2017. The charge had been filed a year earlier. He was sentenced to one year in the Boone County jail.

27. Plaintiff Fotoohighiam, while incarcerated in the Boone County jail, was also charged with conspiracy to commit murder and other related criminal felonies in August 2017.

28. On April 7, 2022, Plaintiff Fotoohighiam was found not guilty on all of those charges in a bench trial presided over by Judge Steven Ohmer.

29. On April 7, 2022, Plaintiff Fotoohighiam was exonerated of all criminal charges and accusations levied against him.

30. In Plaintiff Fotoohighiam's divorce action, a Receiver was appointed to oversee the business and operations of the two Plaintiff corporations in September 2016. Even when these two corporations operated with the name "International" in their titles, they were supposed to be pursuing and conducting the same business as these two Plaintiff corporations were doing prior to Plaintiff Fotoohighiam's sojourn to Iran and to his incarcerations.

31. After Plaintiff Fotoohighiam was released from the Boone County jail on April 7, 2022 he took control of these two Plaintiff corporations which had been awarded to him as his separate property in his divorce.

32. Over the course of several months in the last half of 2015, Plaintiff Fotoohighiam arranged for and/or directed that various sums of money totaling $2,888,900.00 be given to the Sarmastis, which they received, for the purpose of safekeeping the money and then expending it as directed by Plaintiff Fotoohighiam to Plaintiffs' creditors and parts suppliers.

33. All moneys came from Electenergy, Electroflow, ETI, or persons or entities that did business with them. The money was to be expended to secure parts for the Plaintiff corporations and/or their distributors or to pay indebtedness of Plaintiff Fotoohighiam and/or the Plaintiff corporations.

34. All persons who contributed to the $2,888,900 who are not Plaintiffs herein, have authorized Plaintiff Fotoohighiam to pursue this cause of action against the Defendant Sarmastis on their behalf to the extent that they are entitled to any of the money that can be recovered from the original amount of $2,888,900 provided to the Sarmastis. *See* copy of the accounting of $2,688,900 of the $2,888,900 provided to the Sarmastis, when the moneys were provided, the amounts provided, and by whom the moneys were provided attached hereto and incorporated herein as EXHIBIT 4.

35. In addition to those moneys, $100,000.00 was provided to the Sarmastis by Masoud Arab in 2016 and $100,000.00 was provided to them by Hassan Hossein Damghani in 2017 for the same purposes as stated above.

36. In July 2022, well after when Hassan Hossein Damghani provided $100,000.00 to the Sarmastis, they each transferred their twenty-five percent (25%) interest in Electenergy to Damghani (total 50% interest in the company). However, the Sarmastis fraudulently back-dated that transfer to 2011. See acknowledgment of the transfer, back-dated, signed by both Neda and Al Sarmasti attached hereto and incorporated herein as EXHIBIT 5.

37. The amounts given to the Sarmastis were to be used to pay off debts of the Plaintiffs, but also to provide for the benefit of distributors and licensees of the Plaintiff corporations sums to pay for new parts and supplies that were needed for maintenance of equipment that had already been sold and for the assembly of newly produced devices.

38. The Sarmastis acknowledged receipt of these sums and agreed to carry out the instructions of Plaintiff Fotoohighiam to pay out the sums in amounts to designated payees and communicated their agreement to distributors, licensees and suppliers of Plaintiff corporations.

39. The obligations that the Sarmastis agreed to pay were owed to suppliers and licensees and creditors and totaled much more than the somewhat less than $3 Million dollars entrusted to the Sarmastis. See EXHIBIT 4 for a list of amounts owed and to whom before additional sums were given to the Sarmastis by Mr. Arab and Mr. Damghani.

40. Plaintiff Fotoohighiam negotiated reductions in the amounts owed with those persons to whom he and the Plaintiff corporations had financial obligations and reductions in amounts which would be charged for parts for distributors. The reductions in indebtedness

totaled over $3,000,000 and were to be honored so long as payments on the agreed upon reduced amounts occurred in early 2016 and certainly before September 2016.

41. This information was provided to the Sarmastis by Plaintiff Fotoohighiam. The Sarmastis knew that payments on the obligations would benefit the Plaintiffs and would provide for the continuation of the businesses of the Plaintiff corporations in which they had an interest at the time the moneys were transferred to them and would benefit the businesses of the Plaintiff corporations' distributors, licensees and suppliers.

42. In fact, the money was given to the Sarmastis for this purpose because they were shareholders in Plaintiff Electenergy and because they had acted on behalf of the Plaintiff corporations purchasing parts and supplies for them to use in the production of the devices they sold or licensed.

43. The Sarmastis acting as shareholders of the Plaintiff corporations who assisted in conducting the business of the corporations with some of the persons and/or businesses to whom the Plaintiffs owed sums agreed to make sure that the moneys were distributed in accordance with the instructions of Plaintiff Fotoohighiam. They agreed to do so for the benefit of the Plaintiff corporations in which they had an interest and to do so without direct compensation.

44. During the course of the years when Plaintiff Fotoohighiam was residing in Iran and/or was incarcerated in Boone County, the Defendant Al Sarmasti, on behalf of the two Plaintiff corporations, was in contact with suppliers and licensees of both corporations who were located in the Middle East in order to facilitate the business of the Plaintiff corporations. However, the majority of what Al Sarmasti and/or Neda Sarmasti did for the benefit of the Plaintiff corporations and their distributors, licensees and suppliers was done in the United States and with companies in the United States.

45. The Sarmastis helped secure and arrange for the purchase of various parts necessary for the production of the devices manufactured by these two Plaintiff corporations whose only manufacturing facility in the United States was in Columbia, Missouri. These parts included, but were not limited to, reactors, RC cans, regulators, relays, coils, contactors, monitoring systems and cabinets all of which were used in the manufacturing of the Plaintiff corporations' devices.

46. Some of the supplies and parts for these two Plaintiff corporations were provided by business entities located in Missouri. Al Sarmasti arranged business with those suppliers by initiating contracts with them in Missouri.

47. During the time when Plaintiff Fotoohighiam was not residing in Columbia, Missouri and/or was incarcerated, and Defendant Al Sarmasti was working with suppliers of the Plaintiff corporations. Al Sarmasti was transacting business with and helping persons working in Columbia, Missouri and/or in other parts of Missouri, and outside the U.S. on behalf of both Plaintiff corporations.

48. During that time, Al Sarmasti would be in regular contact with these persons in Missouri. There were many phone calls and email contacts between Al Sarmasti and persons working in Missouri and outside the U.S. for the Plaintiff corporations, many of which were initiated by Al Sarmasti in order to facilitate transactions on behalf of the two Plaintiff corporations.

49. The Sarmastis never paid any moneys from the amounts given them for the purpose of paying suppliers, distributors, and parts manufacturers of the Plaintiff companies as originally intended and which the Sarmastis agreed to do. The Sarmastis promised the Plaintiffs' suppliers and creditors that they could make payments on behalf of the Plaintiffs.

50. While Plaintiff Fotoohighiam was incarcerated in the Boone County jail, the divorce between himself and Hedieh Zaerin Fotoohighiam, Case No. 15BA-FC00643 in the Boone County Circuit Court, was being litigated through various stages of discovery and eventually through trial.

51. During those divorce proceedings, the attorney for Plaintiff Fotoohighiam's now exwife, contacted the Sarmastis and asked that the funds that they were holding at the direction of and on behalf of Plaintiff Fotoohighiam, the other Plaintiffs and their distributors, suppliers and customers, for the business purposes of Plaintiffs Electenergy and Electroflow, be paid instead for the purpose of adjudicating Plaintiff Fotoohighiam's divorce.

52. Plaintiff Fotoohighiam's exwife's attorney, through communications with the attorney for the Sarmastis, arranged for the Sarmastis to turn over $2,164,400.00 of the sums given to them for safekeeping and for expenditures on behalf of the above named Plaintiffs and their suppliers, distributors and customers, to the Boone County Circuit Court instead in exchange for the Sarmastis keeping over $400,000 of that sum for themselves.  The Sarmastis expressed that they believed that Plaintiff Fotoohighiam would be convicted and incarcerated, most likely, for the remainder of his life.

53. For that purpose Plaintiff Fotoohighiam's exwife's attorney persuaded the judge presiding over Plaintiff Fotoohighiam's divorce to order the Sarmastis to pay $2,164,400 from the funds intended for the benefit and use of Electenergy and Electroflow and its distributors and suppliers to the Circuit Clerk of the Boone County Circuit Court to be administered through the divorce proceedings.

54. Acknowledgment that money had been given to the Sarmastis for purposes mentioned above was made by their attorney in a letter to the attorney for Plaintiff

Fotoohighiam's ex-wife on April 15, 2019, a copy of which is attached hereto as EXHIBIT 1. However, the Sarmastis' attorney did not correctly state the total amounts given to the Sarmastis for their safekeeping and later properly directed expenditure.

55. The Sarmastis paid Plaintiff Fotoohighiam $290,000.00 in 2022 from the sums entrusted to them. However, they retained over $434,000.00 of the amounts entrusted to them for the benefit of Electenergy and Electroflow and their distributors and suppliers for their own benefit instead. The Sarmastis then falsely claimed that Plaintiff Fotoohighiam owed them approximately that sum, but have provided no evidence to support that claim.

56. Plaintiff Fotoohighiam does not owe the Sarmastis any sum of money.

57. The Sarmastis acknowledged to different persons who had business with the Plaintiff corporations that the sums accounted for above had been entrusted to them by Plaintiff Fotoohighiam and were to be paid to creditors and suppliers of the Plaintiffs and that they would pay out the sums as Plaintiff Fotoohighiam directed. However, the Sarmastis told these persons that they would only do so if they were compensated for their services in the amount of $400,000. This request was made in spite of the fact that they had agreed to pay suppliers and for parts and to pay Plaintiffs' indebtedness at compromised amounts without direct compensation.

58. In Plaintiff Fotoohighiam's divorce in September 2016, a Receiver was appointed to take control of all of Plaintiff Fotoohighiam's property and/or to determine whether certain assets were part of his separate property or should be part of the marital estate.

59. However, well before that date, the Sarmastis could have and should have paid out all sums entrusted to them to the various entities, the suppliers and creditors of the Plaintiffs, as they had been directed to do.

60. Had the Sarmastis done that, there would have been no funds to deposit in the divorce court. Rather, all of the sums transferred to the divorce court would have been used for the benefit of Plaintiffs and for those who had contributed to the $2,888,900 deposited with the Sarmastis.

### COUNT I - Breach of Fiduciary Duty

61. Plaintiff realleges and incorporates herein allegations in paragraphs 1-58.

62. The Sarmastis agreed to hold the funds given to them in trust as enumerated above for Plaintiffs to use to fulfill the obligations of Electenergy and Electroflow and their distributors and suppliers in order to pay the amounts Plaintiff Fotoohighiam so designated, to the persons and/or entities so designated by Plaintiff Fotoohighiam for these purposes and to pay obligations of Plaintiff Fotoohighiam.

63. Even if this relationship did not create an actual trust relationship, which Plaintiffs believe it did, it created a confidential relationship which serves as the basis for a constructive trust being imposed on the Sarmastis for the benefit of Plaintiffs.

64. Plaintiff Fotoohighiam demanded that the sums the Sarmastis were holding in trust for the agreed purposes be paid out as per instructions provided to the Sarmastis before September 2016. The Sarmastis refused and failed to pay the amounts as instructed by Plaintiff Fotoohighiam for the agreed purposes. As a direct result of the Sarmastis failure to pay those sums as directed, the Plaintiffs lost the benefit of the sums entrusted to the Sarmastis.

65. The Sarmastis acknowledged the above arrangements with individuals affiliated with Plaintiffs and/or who did business with Plaintiffs, but demanded to be paid for "their services" in the amount of $400,000 before making any payments as directed by Plaintiff

Fotoohighiam in spite of the fact that they agreed not to charge for their services because the fulfillment of their obligations to Plaintiffs would enhance their ownership interest in Plaintiff Electenergy.

66. The Sarmastis held the funds given to them and did not expend them until such time as they were caused to transfer over $2,140,000 of the sums to the Fotoohighiam divorce court and those sums were no longer available to pay the compromised indebtedness as Plaintiff Fotoohighiam directed. That included sums given to the Defendant Sarmastis by Mr. Arab.

67. It was not until 2022 that the Sarmastis returned $290,000 to Plaintiff Fotoohighiam.

68. The Sarmastis further breached their fiduciary duties to Plaintiffs by allowing ownership of residential real estate located at 5503 Carrick Crt., Columbia, MO 65203, and commercial real estate located at 1201 Rangeline St., Columbia, MO 65201, be transferred to third-parties without compensation to Plaintiffs.

69. As a result of the Sarmastis breach of their fiduciary duties to Plaintiffs, the Plaintiffs lost use of the sums entrusted to the Sarmastis (except for $290,000) and lost over $3,000,000 in debt forgiveness which had been granted them by their creditors and suppliers.

70. The Sarmastis acted with evil motive and/or reckless disregard for the rights of Plaintiffs entitling Plaintiffs to punitive damages.

**WHEREFORE**, Plaintiffs pray that this Honorable Court grant them a judgment in an amount in excess of $5,000,000.00 against the Sarmastis together with prejudgment interest, attorneys fees, their costs herein, grant them an award of punitive damages in an amount that is fair and reasonable and grant such other and further relief as the Court deems just under the circumstances herein.

## COUNT II - Breach of Contract

71. Plaintiff realleges and incorporates herein allegations in paragraphs 1-67.

72. The Sarmastis agreed to administer the funds enumerated above as directed by Plaintiff Fotoohighiam and/or his designees in a timely manner.

73. The Sarmastis, instead, misappropriated some of that money to use for their own purposes and held the funds while trying to negotiate being paid for "their services" to pay suppliers and creditors of Plaintiffs and their distributors and licensees.

74. Plaintiffs have demanded that the Sarmastis pay back to Plaintiffs all moneys given to them for the enumerated purposes since they were not willing to pay out any sums as directed by Plaintiff Fotoohighiam for the purposes for which the money was intended in a timely manner.

75. The Sarmastis have thereby breached their agreement to pay out the funds provided to them at the direction of Plaintiff Fotoohighiam and/or his designees and for the purposes Plaintiff Fotoohighiam and/or his designees so directed and have damaged Plaintiffs and their distributors, suppliers and customers and caused them damages in excess of $5,000,000.

76. The Sarmastis breached their agreement with Plaintiffs in a tortious manner, with an evil motive and/or in reckless disregard for the rights of Plaintiffs entitling Plaintiffs to punitive damages.

**WHEREFORE**, Plaintiffs pray that this Honorable Court grant them a judgment in an amount in excess of $5,000,000 against the Sarmastis together with prejudgment interest, attorneys fees, their costs herein, grant them an award of punitive damages in an amount that is fair and

reasonable and grant such other and further relief as the Court deems just under the circumstances herein.

### COUNT III - Unjust Enrichment

77. Plaintiff realleges and incorporates herein allegations in paragraphs 1-73.

78. The Sarmastis have been enriched by retaining for themselves $434,000 of the money entrusted to them. Their unjust enrichment came at the expense of Plaintiffs. It would be unjust for the Sarmastis to retain these sums.

79. By their actions enumerated above, the Sarmastis have enriched themselves unjustly in an amount of at least $434,000 at Plaintiffs' expense.

80. The Sarmastis breached their agreement with Plaintiffs in a tortious manner, with an evil motive and/or in reckless disregard for the rights of Plaintiffs entitling Plaintiffs to punitive damages.

81. WHEREFORE, Plaintiffs pray that this Honorable Court grant them a judgment in an amount of $434,000 against the Sarmastis together with prejudgment interest, attorneys fees, their costs herein, grant them an award of punitive damages in an amount that is fair and reasonable and grant such other and further relief as the Court deems just under the circumstances herein.

WHEREFORE, Plaintiff, individually and derivatively, prays for judgment against the Defendant as follows:

   (i)   On the First Cause of Action, a judgment in an amount in excess of $5,000,000.00 against the Sarmastis;

(ii) On the Second Cause of Action, a judgment in an amount in excess of $5,000,000.00 against the Sarmastis;

(iii) On the Third Cause of Action, a judgment in an amount in excess of $434,000.00 against the Sarmastis;

(iv) Together with prejudgment interest, attorneys fees, costs herein,

(v) Together with an award of punitive damages in an amount that is fair and reasonable; and

(vi) such other and further relief as the Court deems just under the circumstances herein.

Dated: December 4, 2024
New York, New York

**LAW OFFICES OF MARC JONAS BLOCK, P.C.**

By: *Marc Block*
Marc J. Block
*Attorney for Plaintiffs*
42 Broadway, 22nd Floor
New York, New York 10004
Telephone: (646) 821-6886
marcjblock@gmail.com